FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ROGER B.,[1]

                    Plaintiff,

        v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                    Defendant.

No.    4:20-CV-5126-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

        The summary-judgment motions ask the Court to determine, amongst other

issues, whether the Administrative Law Judge (ALJ) needed to subpoena the

treatment records or testimony of Plaintiff Roger B.'s treating counselor. Because

the ALJ found the counselor's treatment records were material to the consideration

of her opinion, the ALJ erred by not subpoenaing either the counselor's records or

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by

first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

testimony.[2] Remand is necessary because this error impacted the ALJ's weighing of the medical opinions and other analysis.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

---

[2] ECF Nos. 16 & 17.

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

[7] *Id.* § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

On October 5, 2016, Plaintiff filed a Title XVI application, alleging a disability onset date in 2009.[18] His claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Mark Kim.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder and posttraumatic stress disorder (PTSD).

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 177-202. Because the application filing date starts the relevant period for Title XVI claims, the ALJ appropriately considered whether Plaintiff was disabled beginning October 5, 2016.

[19] AR 106-23.

[20] AR 48-82.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

  He can perform simple, routine tasks with a reasoning level of 2 or less, with occasional job-related decision-making and simple changes in the work setting. He can have less than occasional and superficial contact with the general public and coworkers.

- Step four: Plaintiff was capable of performing past relevant work as an industrial cleaner.

- Alternatively, step five: Plaintiff was capable of performing work as a hand packager, laborer, and small product assembler. [21]

When assessing the opinion evidence, the ALJ gave:

- partial weight to the examining opinion of Kirsten Nestler, M.D., and the reviewing opinions of Michael Regets, Ph.D., and Kristine Harrison, Psy.D.

- little weight to the treating opinion of Erin Sharma, LMHC, the examining opinion of N.K. Marks, Ph.D., and the reviewing opinion of Luci Carstens, Ph.D.[22]

---

[21] AR 23-39.

[22] AR 31-33.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the lay statement from Plaintiff's estranged wife.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[23] AR 30-31.

[24] AR 33.

[25] AR 1-6.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record.[30]

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

### IV.    Analysis

**A.    Opinion Evidence: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's consideration of the opinions of Ms. Sharma, Dr. Nestler, Dr. Marks, and Dr. Carstens. As discussed below, the Court finds the ALJ erred.

---

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (cleaned up).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., whether a medical provider is 1) a treating provider, 2) an examining provider who examines but did not treat the claimant, or 3) a reviewing provider who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[35]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence. The opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial evidence.[37] The medical

---

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *Lester*, 81 F.3d at 830.

[37] *See* 20 C.F.R. § 416.902 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed

opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

    2.   <u>Ms. Sharma</u>

    Ms. Sharma counseled Plaintiff on a regular basis—generally weekly—since April 2015.[39] In March 2019, Ms. Sharma issued a letter identifying the diagnoses as PTSD (chronic), major depressive disorder (moderate recurrent), and lower cognitive functioning, and identifying Plaintiff's symptoms as low motivation, low energy, lack of persistence, feelings of unworthiness, significantly low self-esteem, flashbacks to trauma that cause complete emotional shutdown (shutting his eyes, disconnect, tiredness), problems with too much sleep, lower cognitive functioning, difficulties/slowness with his normal activities of daily living (which contributed to his marriage dissolution, house foreclosure, and homelessness), and problems with his memory recall and follow through, including challenges with mixing up scheduled times, forgetting appointments, and shutting down in his process

---

audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.); *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[39] AR 57 & 366-67.

1

2

appointments.[40] Ms. Sharma opined that Plaintiff's mental health impairments

markedly impact his ability to maintain gainful employment, including:

3

4

- having a very low capacity for follow through and struggling with

   directions that are more than two steps.

5

6

- having difficulty completing session homework because of his lack of

   persistence and his defense mechanism of shutting down and giving up.

7

8

- taking a very long time to process information due to his lower cognitive

   functioning.

9

10

- having significant impairments in relationships, including the inability to

   take constructive feedback because he emotionally shuts down and

11

12

   isolates, thereby creating problems about consistent and timely

   attendance.

13

14

- having difficulty keeping work pace.

- having difficulty with solving simple problems due to his significant rigid

15

   thinking.

16

17

Ms. Sharma stated, "[Plaintiff] may present himself in a way that seems he is

capable, but when one spends time with him his impairments are very evident . . .

18

[Plaintiff] may be able to get a job, as he presents as capable, but due to interfering

19

20

21

22

[40] AR 366-67.

23

symptoms I do not see him being able to keep one for more than a month or so.[41]

Two weeks later, Ms. Sharma wrote another letter[42]:

> ████ has been my client since 4/29/2015. I do take notes, but it is minimal necessary and will not be helpful for his case and I believe will create a cost for him that is not helpful. The records are very minimal and only cover the bases that are necessary. I provided the letter that outlines his diagnosis, and prognosis. If you have any questions regarding this please feel free to call or email at your earliest convenience.

The ALJ gave Ms. Sharma's opinion little weight because 1) she did not provide treatment notes to support her opinion, 2) she is not an acceptable medical source capable of assessing Plaintiff's work limitations, and 3) her remarks are inconsistent with Plaintiff's activities of daily living and care for his son.

Plaintiff argues the ALJ erred by not developing the record by subpoenaing Ms. Sharma's treatment records. While an ALJ need not subpoena all medical records, 20 C.F.R. § 1450(d)(1) provides:

> When it is reasonably necessary for the full presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

The Commissioner contends the ALJ was not required to subpoena Ms. Sharma's counseling records because it was Plaintiff's responsibility to file notice for the issuance of the subpoena if Plaintiff deemed them material, and Plaintiff did not do

---

[41] AR 367.

[42] AR 368.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

so.[43] This argument fails to appreciate that Plaintiff did not deem Ms. Sharma's treatment notes reasonably necessary for the full presentation of Plaintiff's case.[44] Plaintiff argues that he is unable to sustain full-time work and maintains that Ms. Sharma's treating opinion, along with her noted observations and findings, set forth why Plaintiff is unable to work. Plaintiff highlights that Ms. Sharma herself stated she took minimal notes during her treatment sessions and that her minimal notes would not be helpful for this case, particularly as her opinion detailed her diagnoses and prognosis. Rather than accept Ms. Sharma's opinion, the ALJ deemed Ms. Sharma's treatment records (or the lack thereof) material to an issue in this case,  i.e., what weight to give to Ms. Sharma's opinion and what limitations to include in the RFC. The ALJ gave little weight to Ms. Sharma's opinion, in part, because she did not provide treatment notes to support her opinion. That she did not provide treatment notes, however, is not a germane reason for the ALJ to discount Ms. Sharma's opinion given that Ms. Sharma advised that her treatment notes contained minimal information and so she had instead authored the two-page opinion detailing the reasons for her opinion. Because the treatment notes, or

---

[43] ECF No. 17 at 8-9.

[44] At the administrative hearing, Plaintiff's counsel highlighted that the ALJ could issue a subpoena if the ALJ deemed the treatment records material. AR 54. *See also* AR 52-54 & 81 (indicating that Ms. Sharma's opinion is consistent with Dr. Marks' opinion that Plaintiff is unable to maintain necessary pace and attendance).

lack thereof, were material to the ALJ's consideration of Ms. Sharma's opinion, the ALJ erred by not subpoenaing her records or her testimony.[45]

The Commissioner argues any error is harmless because 1) further development of the record was unlikely to yield a different result because Ms. Sharma had stated her records were very minimal, and 2) the ALJ offered other reasons for discounting Ms. Sharma's opinions. As to the first point, the Court is limited to addressing the reasons articulated by the ALJ for discounting Ms. Sharma's opinion.[46] Here, the ALJ discounted Ms. Sharma's opinion because it was not supported by treatment notes. The ALJ did not discount Ms. Sharma's opinion because it was not explained or supported by the information contained within the two-page opinion itself. Aware that the treatment records were unlikely to provide information beyond attendance dates and other general information, the ALJ could have developed the record by subpoenaing Ms. Sharma's testimony, *or*

---

[45] *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").

[46] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ asserts).

1

2

the ALJ needed to not discount Ms. Sharma's opinion on the basis of unprovided

treatment notes.[47]

3

4

The Court turns now to the other two reasons articulated by the ALJ for

5

discounting Ms. Sharma's opinion: that Ms. Sharma was not an acceptable medical

6

source capable of assessing Plaintiff's work limitations and that Ms. Sharma's

7

remarks were inconsistent with Plaintiff's activities of daily living and care for his

8

son. As a counselor, Ms. Sharma is considered a medical source, but not an

9

acceptable medical source.[48] Even though she is not an acceptable medical source,

10

she may render an opinion about how Plaintiff's conditions affect his ability to

11

perform basic work activities.[49] The ALJ may not discount the opinion of a

12

nonacceptable, or "other," medical source without specific reasons germane to that

13

medical source.[50] Here, the ALJ accurately found Ms. Sharma was not an

14

acceptable medical source. However, Ms. Sharma's opinion, based on counseling

15

16

[47] *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930-32 (9th Cir. 2014) (finding

17

that it was not clear from the record that the ALJ's error in failing to properly

develop the record was inconsequential to the nondisability determination).

18

19

[48] *See* 20 C.F.R. § 416.902(a) (applying regulation as it applies to pre-March 27,

2017 claims).

20

21

[49] *Bruce*, 557 F.3d at 1116.

22

[50] *See* 20 C.F.R. § 416.927(f)(1); *Molina*, 674 F.3d at 1111-12. *See also Stout v.*

23

*Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

Plaintiff for four years, provided insight about how Plaintiff's impairments affect his ability to function. As such, it should have been considered by the ALJ.[51] On this record, the ALJ erred by finding that Ms. Sharma was not capable of offering an opinion as to how Plaintiff's impairments limited his ability to work.[52]

Finally, the ALJ discounted Ms. Sharma's opinion because her "remarks were inconsistent with the evidence showing Plaintiff was capable of activities of daily living and the care of an infant."[53] An ALJ may discount an opinion that is inconsistent with the claimant's ability to perform and sustain daily living activities, including child care.[54] Yet, the ALJ must be mindful that "many home activities are not easily transferable to what may be the more grueling

---

[51] 20 C.F.R. § 416.927(f)(1); Soc. Sec. Rlg. 06-03p (as applicable to pre-March 27, 2017 claims).

[52] The Commissioner accurately highlights that the ALJ need not consider an opinion about whether a claimant is or is not disabled as such an opinion is reserved to the Commissioner and is therefore not entitled special significance. *See* 20 C.F.R. § 416.927(d). However, Ms. Sharma opined specific nonexertional limitations. She did not simply offer an opinion that Plaintiff was disabled.

[53] AR 33 (cleaned up).

[54] *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

environment of the workplace."[55] Here, there is no issue as to whether Plaintiff is able to perform the physical demands of work or daily living activities. Rather the question is whether Plaintiff's mental impairments impact his ability to perform and sustain work. The ALJ summarily found that Plaintiff was capable of performing activities of daily living and caring for an infant, citing to the adult function report prepared on Plaintiff's behalf and Dr. Nestler's December 2016 consultative examination.[56] The ALJ does not explain why Plaintiff's day-time care for a newborn, which involved getting up when the baby got up, and doing some household chores when necessary, such as sweeping and dishwashing, is inconsistent with Ms. Sharma's opinion that Plaintiff's impairments limit the consistency, persistence, and pace of his daily living activities. Ms. Sharma highlighted that Plaintiff's impacted daily living abilities were evidenced by his marriage dissolution and his estranged wife taking their son in the fall of 2017, his house foreclosure, and his homelessness. The Commissioner argues that caring for a newborn should be considered clear evidence that Plaintiff can maintain a full-time job on a sustained basis. However, this argument fails to reflect that Plaintiff's caring for his less than two-year-old son occurred at Plaintiff's home (where his social anxiety is lessened), that a newborn and toddler often sleep for several hours of the day, and that Plaintiff no longer cared for his son beginning in

---

[55] *Fair*, 885 F.2d at 603.

[56] AR 252-59 & 329-33.

the fall of 2017. Without more explanation as to why Ms. Sharma's opinion is inconsistent with Plaintiff's activities and care for his son through the fall of 2017, this sole remaining reason cannot serve as a germane basis for discounting Ms. Sharma's treating opinion, rendered after four years of regular counseling.

### 3.    Dr. Nestler, Dr. Marks, and Dr. Carstens

Plaintiff argues the ALJ erred by improperly giving more weight to Dr. Nestler's consultative opinion while giving no weight to Dr. Marks' consultative opinion, an opinion that was largely adopted by Dr. Carstens on review.

In December 2016, Dr. Nestler reviewed the Social Security Administration (SSA) function report completed by Plaintiff's then-wife, obtained a medical and personal history from Plaintiff, and conducted a mental status examination.[57] Dr. Nestler was unable to verify that Plaintiff met the criteria for any DSM-5 diagnosis, as he did not appear to be severely anxious or depressed, or have any mental health impairment. She opined that Plaintiff would not have difficulty performing simple and repetitive tasks or detailed tasks, his cognitive testing was normal, he would not have any difficulties with supervisors, coworkers, or the public, and he would be able to deal with the usual stress encountered in the workplace and perform work activities on a consistent basis without special or additional instructions. The ALJ gave partial weight to Dr. Nestler's consultative opinion because 1) she was familiar with the SSA disability program, 2) her

[57] AR 329-33.

opinion was based on an examination of Plaintiff, and 3) the opinion was consistent with the overall medical evidence at that time even though subsequent medical evidence and Plaintiff's testimony showed that Plaintiff had more mental limitations than those opined by Dr. Nestler.

About a year later, Dr. Marks reviewed Plaintiff's SSA intake interview and psychologically examined Plaintiff.[58] After performing a clinical interview and a mental status examination, Dr. Marks diagnosed Plaintiff with unspecified schizophrenia spectrum and other psychotic disorder, unspecified alcohol-related disorder, unspecified anxiety disorder, unspecified depressive disorder, unspecified trauma- and stressor-related disorder, and unspecified cannabis-related disorder. She opined that Plaintiff was not (or was only mildly) limited in his ability to understand, remember, and persist in tasks by following very short and simple instructions, moderately limited in his abilities to learn new tasks and perform routine tasks without special supervision, and markedly limited in his abilities to:

- understand, remember, and persist in tasks by following detailed instructions.

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision.

- adapt to changes in a routine work setting.

---

[58] AR 343-48.

- make simple work-related decisions.

- be aware of normal hazards and take appropriate precautions.

- ask simple questions or request assistance.

- communicate and perform effectively in a work setting.

- maintain appropriate behavior in a work setting.

- complete a normal workday and work week without interruptions from psychologically based symptoms.

- set realistic goals and plan independently.

Dr. Marks also mentioned that Plaintiff would benefit from counseling and a referral to the state vocational rehabilitation agency to help him find additional training. Dr. Marks noted that Plaintiff "presents well," and that she was under "the impression that he isn't telling me all the details about much of his life. More information is strongly recommended in order to make the best recommendation for him."[59] The ALJ gave little weight to Dr. Marks' opinion because 1) she conducted a cursory evaluation, 2) her check-box opinion offered no supporting explanation and was not supported by the unremarkable mental status examination, 3) her opinion was internally inconsistent, and 4) it was inconsistent with the longitudinal medical record.[60]

---

[59] AR 346.

[60] AR 32.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Shortly after Dr. Marks' examination, Dr. Carstens reviewed Dr. Marks' psychological evaluation.[61] Dr. Carstens agreed with Dr. Marks' assessed diagnosis and opined limitations but found, based on the severity of Dr. Marks' ratings and clinical observations, that Plaintiff's impairment was expected to persist a minimum of 24 months, rather than 12 months. The ALJ gave little weight to Dr. Carstens' opinion because it was 1) conclusory, 2) not well-explained, and 3) based on minimal record review.

Plaintiff argues the ALJ erred by giving little weight to Dr. Marks' and Dr. Carstens' opinions, while giving partial weight to Dr. Nestler's opinion. Beginning with Dr. Nestler, the ALJ first gave partial weight to Dr. Nestler's opinion because she was familiar with the SSA disability program.[62] While an ALJ may consider "the amount of understanding [that a medical source has] of our disability programs and their evidentiary requirements,"[63] the ALJ failed to likewise give partial weight to the opinions of Dr. Marks and Dr. Carstens, who are also familiar with the SSA disability program because they both served as psychologists to determine the social-security-disability eligibility for Plaintiff. [64]

---

[61] AR 340-42 & 349-50.

[62] AR 32.

[63] 20 C.F.R. § 416.927(c)(6).

[64] *See, e.g.*, https://www.dshs.wa.gov/esa/disability-determination-services (last viewed May 25, 2021).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Accordingly, Dr. Nestler's familiarity with the SSA disability program was not a legitimate reason to give more weight to Dr. Nestler's opinion than to Dr. Marks' or Dr. Carstens' opinions.

Second, the ALJ gave partial weight to Dr. Nestler's opinion because her assessment was based on an examination of Plaintiff.[65] However, Dr. Marks' assessment was also based on an examination of Plaintiff; yet the ALJ did not likewise credit Dr. Marks' opinion. Instead, the ALJ found Dr. Marks' psychological consultative examination was cursory, without citing any supporting evidence to establish it was a more cursory examination than the one conducted by Dr. Nestler. This was error.

Third, the ALJ found Dr. Nestler's opinion was consistent with the medical evidence of record at the time she examined Plaintiff in December 2016, but that subsequent medical evidence and Plaintiff's testimony showed Plaintiff had some mental limitations, though not as extensive as opined by Dr. Marks or Dr. Carstens.[66] The ALJ does not explain why he gave Dr. Nestler's opinion weight when Dr. Nestler did not find any severe impairment.[67] In comparison, the ALJ found that, beginning by at least October 2016, Plaintiff had the severe

---

[65] AR 32.

[66] AR 32-32.

[67] AR 332 (finding she was "unable to verify that he meets criteria for any DSM-5 diagnosis").

impairments of depressive disorder and PTSD. Without further explanation as to why Dr. Nestler's opinion was consistent with and supported by the medical evidence in December 2016, it is unclear why the ALJ gave any weight to Dr. Nestler's opinion—an opinion that indicated Plaintiff had no severe impairment or limitations.

Turning to Dr. Marks' opinion, the ALJ discounted Dr. Marks' opinion as being cursory and providing little explanation for the check-box form.[68] But Dr. Marks, like Dr. Nestler, performed a consultative examination and utilized a standard form to set forth her opinion. The standard form included Dr. Marks' observations and findings, including her findings that Plaintiff scored a 30 (severe) on the Beck Depression Inventory and a 57 (severe) on the Beck Anxiety Inventory, that his perception was not within normal limits, and that his working memory was poor.[69] The ALJ must more meaningfully explain why these findings and observations are inconsistent with Dr. Marks' moderate and marked limitations, which Dr. Carstens also agreed with. The ALJ also discounted Dr. Marks' opinion because her marked limitations were inconsistent with her recommendation that Plaintiff be referred to a work training program and that there was no need for a representative payee.[70] But mere participation (or recommendation that one

---

[68] AR 32.

[69] AR 344-48.

[70] AR 32.

participate) in a work training program should not be relied on as evidence that the claimant is not disabled by a mental impairment. Rather, the type, nature, and duration of the training completed by the claimant should be evaluated.[71] Finally, the ALJ discounted Dr. Marks' opinion because Plaintiff received limited mental-health treatment. On this record—a record that did not contain a recommendation that Plaintiff take prescribed medication to treat his mental health conditions or evidence that he refused to take medication without good cause, and which indicates Plaintiff engaged in almost weekly counseling for four years—the ALJ must more meaningfully explain why Plaintiff's course of treatment serves as a basis to discount Dr. Marks' opinion.

It is not clear that the ALJ's errors when discounting Ms. Sharma's opinion and weighing the medical opinions were inconsequential.[72]

---

[71] *See DeLorme v. Sullivan*, 924 F.2d 841, 849 n.18 (9th Cir. 1991) (advising that mere participation in a work training program should not be relied on as evidence that the person is not disabled by the mental impairment—the totality of the work-training circumstances must be evaluated).

[72] Because of the ALJ's combined errors when weighing Ms. Sharma's opinion and the Dr. Nestler's and Dr. Marks' opinions, the Court need not discuss the ALJ's weighing of Dr. Carstens' opinion. On remand, the ALJ is to reconsider each opinion.

**B.    Remand for Further Proceedings**

Because the ALJ erred with respect to weighing opinions, the ALJ erred in determining that Plaintiff could perform past work and that he was, therefore, not disabled.[73] Plaintiff contends that an award of benefits is appropriate.

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the Court's discretion.[74] Remand for further proceedings is the usual course, absent clear evidence from the record that a claimant is entitled to benefits.[75] For instance, where "there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary."[76]

Here, there are various inconsistencies and conflicts in the record that make further administrative proceedings useful. For example, the opinions vary as to what Plaintiff's mental health impairments are and the limiting impact of the impairments. A cognitive consultative examination is needed to aid in the step-two

---

[73] *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

[74] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[75] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

[76] *Leon*, 880 F.3d at 1047.

analysis (and the disability analysis as a whole). Plaintiff has a history of special education courses, was found by Dr. Marks to have a poor working memory, was noted by Dr. Nestler as slowly performing the math and spelling portions of the examination, and was diagnosed as having lower cognitive functioning by Ms. Sharma (a relevant fact even though she is not an acceptable medical source).[77] Moreover, Dr. Marks noted that additional information was strongly recommended to make the best decision.[78] In addition, as to Plaintiff's mental health conditions, Dr. Marks and Dr. Carstens diagnosed Plaintiff with schizophrenia and psychotic disorder but Dr. Nestler and those reviewing the record in 2016 did not.[79] These conflicts should be resolved by the ALJ on remand, rather than by the Court.[80]

On remand, when assessing Plaintiff's symptoms, the ALJ must be mindful that he must articulate clear and convincing reasons for discounting Plaintiff's

---

[77] AR 30, 64-65, 331-32, 339, & 366.

[78] AR 346.

[79] It was not legitimate for the ALJ to discount Dr. Marks' and Dr. Carstens' schizophrenia and psychotic disorder diagnoses on the grounds that Ms. Sharma did not diagnose schizophrenia or psychotic disorder, if she is not an acceptable medical source who can offer such diagnoses.

[80] *See id.*

symptoms.[81] General findings are insufficient because the Court cannot affirm discounting Plaintiff's symptoms for a reason not articulated by the ALJ.[82] The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[83] When assessing Plaintiff's mental health symptoms, the ALJ is encouraged to give more weight to the mental health findings made during mental health examinations or treatment sessions, rather than during appointments for solely physical conditions, such as Plaintiff's ear drainage issue.[84] If the ALJ discounts Plaintiff's symptoms because he did not report hearing voices during his examinations, the ALJ must consider whether Plaintiff's mental health conditions contributed to his failure to report such

---

[81] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[82] *See Garrison*, 759 F.3d at 1010.

[83] *Id.* (quoting *Lester*, 81 F.3d at 834, and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[84] *See* AR 364-65. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental health findings against findings from other mental health professionals).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 26

1
2
3

symptoms.[85] As to Plaintiff's care for his son, the ALJ must consider that Plaintiff also reported that his limitations affected his ability to care for his son and, consistent with that report, he no longer cared for his son after November 2017.[86]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

---

[85] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209-1300 (9th Cir. 1999) ("[I[t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

[86] AR 252-59; *see also* AR 244-51 & 366 ("He has significant impairment in holding consistency in his daily life activities which has created significant impairments in his relationships and actually contributed to his recent divorce.").

1      **IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

2  provide copies to all counsel.

3      **DATED** this 10th day of June 2021.

4

5  _____
       EDWARD F. SHEA
6     Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23